May it please this Court, Counsel, I'm Susan Wilhelm with the Office of the State Appellate Defender. I represent the defendant Justin Vaughn and today I'm going to focus on arguments 1, 3, and 5. Justin Vaughn's jury was not given the proper instructions and information with which to weigh Justin's actions. Specifically, the jury did not hear of Demetrius Lucas's tendency for violence, which would support Justin's belief that he needed to defend himself and others from Demetrius's continued violence. In addition to not hearing this critical admissible evidence about Demetrius, the jury was allowed to hear about Justin's prior convictions without the benefit of a balancing test. And the jury was deprived of the specific instructions that would guide them in evaluating the reasonableness of Justin's actions. And these errors all combined to deprive Justin Vaughn of a fair trial. Counsel, wasn't there evidence that the victim was shot from behind and, I mean, wasn't approaching the defendant at the time when he was shot and, therefore, does that not give credence to the court's decision not to allow evidence of self-defense? There is some evidence, yes. According to the statement it says yes, but according to my client and his brother Deverin, Justin had been, Demetrius had just rushed at Justin. Justin says he looked up and suddenly Demetrius was right in front of him and that he shot suddenly and downward trying to get him away. So there is some evidence from my client and from his brother that he shot while being approached, while being rushed by Demetrius and thus shot in self-defense. And, again, in a self-defense case, what we're looking at, well, kind of, when we're looking at the Lynch evidence, what we need here is this evidence of Demetrius' behavior, balanced against Justin's behavior, helps the jury determine which version of the facts are more credible. The Lynch court said it helps complete the picture provided by the testimony. And here, like I said, Deverin said Demetrius ran up and shot and Justin shot when he was within two feet. Justin says Demetrius was about a foot and a half away with his hand up and his body extended toward him. And the coroner could not say whether or not the shot was consistent or not with him reaching. He couldn't say it was inconsistent with him reaching toward him. So what we have here are some, we have conflicting evidence. And when we have this conflicting evidence, the trial court's role is to ask if this conflicting evidence exists. Here, the trial court acknowledged that there was conflicting evidence, but it stated that it didn't believe the defense version. It believed that Justin was disrespected, felt disrespected, and not that he felt afraid. And the trial court erred here because the trial court stepped into the jury's shoes and weighed the evidence. And that was not what the judge was allowed to do. Because he produced conflicting accounts of the facts of the shooting, Justin was entitled to introduce this Lynch evidence to show Demetrius Lucas' violent tendencies, to show that Demetrius Lucas, when he's angry, doesn't back down. When he's made to leave the casino, comes back in, does what he wants. Even when my client produced a gun, Demetrius said, you're going to need that. He is not being deterred. He is not going away. And this Lynch evidence of Demetrius' violent past is necessary for the jury to be able to weigh these versions of facts. Justin was also entitled to a jury instruction on second-degree murder, imperfect self-defense, because he showed some evidence, and the test is some evidence, even slight evidence, that, if lead by a jury, would reduce his culpability for this crime. And Justin showed proof of an actual, albeit unreasonable, need to use self-defense. The violence here occurred in Justin's home, frightening Justin and him, and also endangering his family. And this violence didn't end even when Demetrius was forced outside. Justin and Devlin both testified Demetrius was continuing to charge at Justin. Even though Justin had a gun, Demetrius didn't care. That wasn't going to deter him. He told Justin Justin would need the gun. Demetrius was not going to leave and not going to calm down. And this second-degree instruction was needed by the jury so they could properly weigh Justin's response to the situation that he was facing late at night with his family around and with this man continuing to charge at him. And adding to the errors in this trial, not only did the jury not have the proper evidence about Demetrius Lucas, they had too much evidence about Justin Vaughn, information that was not subjected to a weighing of its prejudicial versus probative value. Justin Vaughn testified in his own defense, and he was impeached with his 2012 convictions for mob action and unlawful restraint. And while his prior convictions are admissible for impeachment, it's only after the judge does the Montgomery balancing test. The judge has to exercise his discretion and weigh whether the prejudicial impact of these prior convictions on what the prejudice will be to the jury, and does it substantially outweigh its probative value in learning about these prior convictions. But here, the court simply stated, once the defendant decided he was going to testify, I do think it's proper for these convictions to come in, and I'll allow the state to impeach. So the trial court failed to exercise its discretion. Again, we never weighed the probative value of these convictions against the prejudice caused by their admission. And this is plain error, because here, the jury's sole focus was on weighing the credibility of Justin Vaughn. As he described his feelings of danger and fear that evening, and information that he had prior convictions for acts of violence could tip the scales against him. The jury could speculate that because of Justin's priors for mob action and unlawful restraint, he was violent and likely to be aggressive. And yet the jury had no information about Demetrius Lucas' longstanding history of violent attacks against others. So this error here tipped the scales of justice and resulted in plain error. And Justin Vaughn's convictions should be reversed. And adding again to these errors, the state has conceded that only asking the jurors here if they had any problem with the four zero principles is error. That's been longstanding error here in Illinois. Here we have closely balanced facts. We have two versions of the facts. And physical evidence is really inconclusive. And in a closely balanced case such as this, these instructional errors are potentially dispositive and require reversal. And for all of these reasons, I ask that Justin Vaughn's convictions be reversed and this matter be remanded for a new trial. Thank you, Counsel. Here I am. Counsel, may it please the Court. Kelly Stacey appearing on behalf of the State. The parties disagree whether or not the evidence in this case is closely balanced. The State believes the evidence actually is not closely balanced. The claims that the defendant raises on appeal are basically based on his determination that self-defense should apply in this case. However, when Demetrius was interviewed, sorry, the defendant was interviewed after the killing of Demetrius Lucas, his own statements deny that there was any self-defense in the case. He was asked specifically by the interviewers if he acted in self-defense. He said no. He was asked, did you act in defense of others? He also said no. In fact, he initially denied he was even a shooter. And his final claim was he only meant to scare Demetrius. Now, why is all that important here? The reason it's important here is all of those things are entirely inconsistent with the claim of self-defense. Saying I wasn't the shooter, saying, well, I didn't mean to kill him, I meant to only scare him. Under first-degree murder, there's a knowledge component, there's an intent component, and whether or not there's reasonable belief of death or great bodily harm resulting. So all of these things about an accident or, well, I wasn't the shooter, those don't line up to a claim of self-defense. And that is why the court, as the gatekeeper of which jury instructions actually come in, the court said, well, that claim shouldn't come in here because your claim is really not consistent with self-defense. In addition, once the defendant pulled the gun on Demetrius in the house, Demetrius put his hands up, he went out the front door, and the defendant went right out behind him. Demetrius was unarmed. There's no one that testified he had a weapon that he was of any harm at all to Justin Vaughn. So even if you consider that he threw dice, he threw pizza, he knocked a table over, an act kind of unruly in the house, none of that is justification for the use of excessive force by Justin Vaughn. A single battery does not entitle the defendant to deadly force. And the people cited People v. Harmon, a 1st District 2015 case for that proposition. The other issue with regard to Demetrius leaving the home is once that potential threat, and it's a very low potential threat here, we're not conceding anything about the level of that threat being justifying using a gun and Demetrius. But once that even simple perceived threat had passed, once he left the house, the defendant then became the aggressor in this case. He went after Demetrius with a loaded weapon. Demetrius was leaving. I think there may be some discrepancy on whether or not his back was to Justin or was he running. It's hard to tell. I believe the evidence indicated a side, a wound on his right side. In any event, the trial court did not abuse its discretion in finding a self-defense instruction was not warranted here. Counsel, how far away was the defendant from the victim at the time of the shooting? My recollection on the facts were that the defendant was about 5 feet away from Demetrius. There's some evidence from, or testimony from Devron, which is Justin Vaughn's brother, that perhaps Justin was going towards him. If that's the case, depending on which version we believe, I believe it might have been 2 1⁄2 feet away. And that's a, that's going to be a credibility determination, I believe, there. But virtually all of these claims revolve around do we really have self-defense here? And I believe the same issue relates to this alleged imperfect self-defense because, again, we have defendant initially, right after the incident happened, saying, well, I wasn't the shooter. He only came forward and admitted he was the shooter after everyone else there said, hey, Justin was the shooter here. He's the one who shot Demetrius. So then I think he realized, oh, I'd better come clean with that, and now what am I going to say? But he denied self-defense. He denied defense of others and claimed he only meant to scare Demetrius. None of that is consistent with self-defense. It's actually contrary to the claim of self-defense. And with regard to the near-fact impeachment on Issue 5 counsel mentioned here today, it was the defendant who stipulated, he asked the court, he said, I don't want to have that count 3, and count 3 was actually unlawful possession of weapons by a felon. He didn't want to have that count read to the jury, so he asked if the parties would stipulate that, hey, he's got these two prior convictions. So what changed? Well, what changed was once he decided he was going to testify in the case, then not just the mere fact of those convictions were relevant, but what was the nature of those? Why is that important? So that the witness's credibility could be determined. The jury was entitled to know that. Those convictions only came in. Well, now he's decided to testify. It factors into that credibility component. And how does he come into court now and blame the trial court for allowing all of that in when it was his stipulation in the first place? In any event, under the record in this case, the facts do not support any claim of self-defense. Those claims were initially denied by the defendant, and now in appeal he wants to rely on a self-defense claim. But the trial court in this case did not abuse its discretion in denying the imperfect self-defense second degree murder instruction, nor did it deny the self-defense instruction. So the people respectfully ask you to affirm. Thank you. And I would assert that Justin only wanted to scare him to state courts. It's consistent with his actions in imperfect self-defense. He said that he shot downward as he was being charged by Demetrius. He was acting quickly in a situation where he felt like he was being the most committed simple battery. But again, Justin and Deverin testified that Demetrius charged him outside, and it said you're going to need that gun. He could have taken the gun. He was not being deterred, and he was not leaving. And the state, a quote from the state, that's going to be a credibility determination. Yes, there are credibility determinations in this case, and those are the province of the jury. It's not the role of the trial court judge to say that this evidence, this evidence that was produced of the conflicting testimony, it's not his role to go in and weigh the credibility of it. It's only to ask is there sufficient slight evidence. And as to the fifth issue, yes, there is a stipulation, because there's two counts here. There's the possession of a weapon by a felon, and there's the murder case. And he did stipulate as to impeachment and letting them know that he was a felon for the purposes of that, of the count for the weapons possession case. However, when he's testifying and his prior, there's again a question before the judge, are you going to allow him to be impeached for his prior convictions? And the judge said, sure, if he's going to take the stand, those are going to come in. At that point, there is a specific Montgomery balancing test that the judge needed to apply to ask to weigh the positive value of these convictions against the prejudicial value of allowing the jury to hear exactly what they were. Two different things at play here, the stipulation because of the firearms offense and the fact that he then took the stand, and now we're talking about the jury finding out what his priors are. He did not stipulate to that in any means, and the judge was required to conduct the Montgomery test, which they did, which the judge did not do. And for those reasons, I would ask that his convictions be reversed. Thank you. Thank you, counsel, for your arguments. That concludes oral arguments for the day, and we'll now go into recess.